# IN RE ESTATE OF FREDERICK HABHEGGER, DECEASED v. FRED JACOB HABHEGGER AND OTHERS.[1]

January 5, 1923.

No. 23,095.

**Relief against failure to object to probate of will.**

1. Where an order for hearing proof of a will merely requires parties interested to show cause why the petition for probate should not be granted, and does not advise them that it is necessary to file objections before the hearing as the statute requires, heirs, inexperienced in such matters, and who are ignorant of the contents of the will, may be excused for not making timely objection.

**When validity of will is question of fact—vacating default of objectors.**

2. It is highly desirable that every case should be determined after a full hearing on the merits. Great inequality in a will in distribution among children, without apparent cause, coupled with confidential relations between the deceased and the preferred beneficiary, and special opportunity on his part to exert undue influence over deceased, generally makes the question of the validity of the will one of fact. There was sufficient showing in this case to require the vacation of an order of probate of a will and relief of objectors from default.

John Habhegger petitioned the probate court for Carlton county for the allowance of the last will and testament of Frederick Habhegger, deceased. The details of the litigation are stated at the beginning of the opinion. From an order of the probate court, Watkins, J., admitting the will to probate, Fred Jacob Habhegger and others appealed to the district court for that county. The appeal was heard by Dancer, J., who affirmed the order of the probate court. From the order of the district court, objectors appealed. Reversed.

*John Jenswold* and *John D. Jenswold,* for appellants.

*J. E. Green* and *Baldwin, Baldwin, Holmes & Mayall,* for respondents.

[1]Reported in 191 N. W. 409.

HALLAM, J.

The will of Frederick Habhegger, deceased, was presented for probate in the probate court and was admitted to probate without objection. Thereafter his children, except one, petitioned the probate court for a vacation of the order admitting the will to probate and for permission to file objections to its allowance. The probate court denied the petition on the ground that no excuse was shown for failure to file objections before the hearing on the will and .that no valid objection to the will was shown. Objectors appealed. On appeal the district court affirmed the probate judge on the latter ground. Objectors appeal to this court.

Frederick Habhegger died November 5, 1921, at the age of 85, leaving 4 sons, 3 daughters and children of 2 deceased daughters. He left an estate appraised at $63,000. His will was dated January 27, 1921, and by it he gave to each of 3 sons and 3 daughters $5,000 each, to the representatives of the deceased daughters $5,000 each, the balance to his son John. On January 25, 1891, he gave 11 deeds of land and 3 assignments of mortgages to John. The stamps on the deeds indicate a value of more than $100,000, and the mortgages aggregate $4,200. These transfers were not made public until after his death. Objectors allege that his fortune was reasonably worth $250,000. Objectors further, by affidavit, show these facts: Deceased was a farmer and brick maker at Wrenshall, Minnesota. John was, for the last 15 years of his life, engaged as foreman at $2,000 a year. In 1917 J. W. Lowe came to Wrenshall and became a banker there. He became very intimate with John, and both cultivated intimacy with deceased, met him with great frequency, and together or separately were frequently closeted with him to the exclusion of all others, and maintained secrecy as to their conversations. For the last few years of his life deceased was in bad health. Lowe and John obtained an unusual and controlling influence over deceased, subjected him to their will and control, and became his guide and director to the exclusion of his other children. Their control reached such a degree that, during 1920, they managed and controlled his entire business and affairs to such

an extent that any one dealing with deceased, including his children, had to go to Lowe or John.

It is alleged on information and belief that the controlling influence of John and Lowe, coupled with the use of fraudulent practice on their part, was the procuring cause of the execution of the will of the deceased. It appears that Lowe employed the attorney to draw the will, procured it from the attorney when drawn and took it to deceased, that deceased later executed it at Lowe's bank, and after its execution delivered it to Lowe with directions to take it to the probate court. Lowe stated in an affidavit that deceased asked him to have the will prepared, furnished him the memorandum of how he wanted his property divided, and stated he wanted to give contestants more than he had provided for them in a former will. There is also an affidavit of merits by objectors, alleging, in the usual form, that they have been advised by counsel after full and fair statement of the case that they have good and substantial grounds for objection upon the merits to the allowance of the will.

Under the law, objections to the probate of a will are required to be filed before the hearing. G. S. 1913, § 7270. In this case the order for hearing of the petition to prove the will merely required the parties interested to show cause, if any they had, why the prayer of the petition should not be granted. Several of the children were present at the hearing. There they heard the will read for the first time. They had no attorney. The probate judge read the will and then said: "The will seems to be proper and I will allow it on proof." Proof was taken and the judge allowed the will. One heir asked if that was final and the probate judge said: "That is all that I can do." This heir then said: "I for one am not satisfied." Quite promptly thereafter they consulted a lawyer and the petition for vacation of the order of probate was presented.

We think the order admitting the will to probate should be vacated.

No fraud was practiced, but we think it clear that the failure of these heirs to contest was excused. They were unfamiliar with legal procedure. The order citing them into court, while in the usual form and legally sufficient, did not advise them, either that

the will was on file and open to inspection, or that it was necessary to file objections before the hearing. They had not seen the will or heard of its contents. Until they heard the will read in probate court, they did not know whether it was objectionable. They might be excused in assuming that they would then have an opportunity to object in some effective manner. They might have secured further information in court had they asked. But none was volunteered to them, and we think they acted about as persons of their inexperience would usually act under the same circumstances. Their default was excused.

We are of the opinion, too, that they made a sufficient showing of merit, to require the vacation of the order of probate and permission to litigate the validity of the will. In general terms they allege undue influence sufficient to avoid the will. They present a sufficient affidavit of merits. The specific facts alleged are by no means conclusive, but they do allege that one heir was, by the will and by deeds almost concurrent with it, given several times the combined amount given to all the rest of the large family. It is alleged that the relations between deceased and the other children were most cordial, and that several of them were entitled to special consideration by reason of great filial care and devotion during old age.

Great inequality in distribution among children, when the relations with all are cordial and amicable, coupled with confidential relationship between the deceased and the preferred beneficiary, and special opportunity on his part to exert undue influence over deceased, generally makes the question of the validity of the will one of fact. Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502; Tyner v. Varien, 97 Minn. 181, 106 N. W. 898; In re Estate of Jernberg, 153 Minn. 458, 190 N. W. 990. When such facts appear, it should require a very clear showing in opposition to justify the court in determining the issue, in advance of a trial, as one of law. It is highly desirable that every case should be determined after a full hearing, on its merits. A party may, by his neglect, lose the right to such a hearing, but we do not think these objectors have done so. They may or may not win. But they should have their day in court.

Order reversed.